UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____
:
PRIVATE JET SERVICES GROUP, LLC    :
:
           Plaintiff,    :      Civil Action No. 1:23-cv-210-PB
:
   v.    :
:
:
TWITTER, INC.    :
:
           Defendant.    :
_____:

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

      Plaintiff Private Jet Services Group, LLC ("PJS" or "Plaintiff") concedes that it did not follow the requirements for booking services set forth in the Air Charter Services Blanket Purchase Agreement ("BPA")[1] it signed with named defendant Twitter, Inc.[2] ("Twitter") (collectively, the "Parties") when PJS dispatched the roundtrip, coast-to-coast private jet flight at issue and billed Twitter $197,725. When Twitter pointed out that PJS

---

[1] The BPA is attached hereto as **Exhibit A** and incorporated by reference as though fully set forth herein. The Court may review copies of documents, such as the BPA, that are central to a plaintiff's claims but were not attached to the Complaint at the motion to dismiss stage. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (on a 12(b)(6) motion, courts may consider "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; . . . [and] documents sufficiently referred to in the complaint" (citations omitted)); *see also In re Montreal, Me. & Atl. Ry., Ltd.*, 888 F.3d 1, 7 n.2 (1st Cir. 2018) (on motion to dismiss, considering agreement not attached to complaint where complaint "repeatedly referenced" it); *MacDonald v. Stafford Cty. Super Ct.*, Civ. No. 18-01100-JL, 2019 WL 1385106, at *1 (D.N.H. Mar. 27, 2019) (considering documents attached to defendant's motion to dismiss).

[2] Twitter, Inc. has been merged into X Corp., and X Corp. files this motion as the successor in interest to Twitter, Inc.

1

did not follow the express terms of the BPA and that Twitter is not obligated to pay, Plaintiff sued.

The BPA constitutes the entire agreement between the Parties with respect to all air charter services provided to Twitter by PJS. It includes express terms that authorize only four of Twitter's employees (the BPA's enumerated Designated Representatives)[3] to contract for private jet flights with PJS. As the Complaint acknowledges, none of them did so. Plaintiff's material breach of the express terms for booking services discharged Twitter's duty under the BPA, and Plaintiff's contract claim thus fails as a matter of law. The Court should dismiss Plaintiff's claims for quasi-contract and unjust enrichment because the services in question were within the scope of an existing, express contract between the Parties. Further, Plaintiff has failed to plead the necessary elements of a quasi-contract claim.

## FACTUAL BACKGROUND

The following factual background summarizes the allegations in PJS's Complaint, asserting claims for breach of contract, breach of quasi-contract, and unjust enrichment. Twitter summarizes these allegations only so that the Court can consider whether PJS's claims should be dismissed.

    **A.**    **The Parties Signed a Contract with Terms Prescribing How Twitter Would Review and Approve PJS Travel**

On June 24, 2020, PJS and Twitter signed the BPA. Compl. ¶ 8. The terms of the BPA require a three-step process for Twitter to contract with PJS for the provision of

---

[3] The four employees authorized by the BPA as Designated Representatives are Jenni Randolph, Doug Hunt, Erich Smith, and Pat Geonetta. Ex. A. Plaintiff fails to allege that any of the Designated Representatives approved the flights at issue.

private jet services: (i) one of Twitter's "Designated Representatives" must request air charter services; (ii) PJS must furnish a Statement of Work ("SOW"); and (iii) one of Twitter's Designated Representatives must approve the SOW. *See* Compl. ¶ 10; Ex. A. The following terms are expressly articulated in the BPA:

> **Aircraft Booking:** . . . . Any Designated Representative of the Customer may book services over the phone or e-mail. Upon booking, PJS will send to such Designated Representative an e-mail confirmation of the flight details, charges, and cancellation terms (any such confirmation, a "Statement of Work" or "SOW"). **Customer's Designated Representative MUST acknowledge acceptance of the terms set forth in the SOW in writing or via e-mail in order to complete the reservation**.
>
> **Charges & Payments:** The total charge for air transportation for each specific flight identified in a SOW (the "Air Charter Services Price") shall be set forth by PJS in such SOW, and shall be agreed to by the Customer in writing as set forth in the paragraph of this Agreement titled "Phone or Email Confirmation".
>
> . . . .
>
> Designated Representative: Exhibit A hereto sets forth the initial agents designated by the Customer to act on the Customer's behalf for the purposes of booking, changing and cancelling flights hereunder (the Customer's "Designated Representatives"). Customer may modify, amend or supplement Exhibit A at any time in order to add, remove or change any Designated Representative(s) upon written notice to PJS.
>
> . . . .
>
> **Amendments and Revisions.** Any amendment, modification, or waiver of, or supplement to, any provision of the BPA, these Standard Terms and Conditions, or any SOW must be agreed upon in writing by both the Customer and PJS to be binding.

Ex. A (emphasis in original). Twitter named four specific individuals as the only Designated Representatives with the authority to contract with PJS. *Id.*

3

### B.      PJS Dispatched $197,725 in Private Flights Without a Statement of Work and Without Approval by a Designated Representative

On or around October 25, 2022, Taylor DeLorenzo, who was not one of Twitter's Designated Representatives, allegedly contacted PJS about booking a private charter flight for former Twitter executive Leslie Berland. Compl. ¶ 12. DeLorenzo contacted PJS "via email and text." *Id.* Based on these communications, on or around October 26, 2022, PJS allegedly dispatched a private jet to transport Ms. Berland from Teterboro, New Jersey, to San Francisco, California. Compl. ¶ 13.

On or around October 27, 2022, Cynthia Ancheta, who was not a Twitter Designated Representative, allegedly contacted PJS by email about booking a flight. Compl. ¶ 15. On or around October 27, 2022, PJS allegedly dispatched a private jet to transport Ms. Berland from San Francisco, California, to Teterboro, New Jersey. Compl. ¶ 16.

On or around October 26, 2022, PJS invoiced Twitter $103,850 for the flight from Teterboro to San Francisco with payment due by November 2, 2022. Compl. ¶ 14. On or around October 27, 2022, PJS invoiced Twitter $93,875 for the flight from San Francisco to Teterboro, with payment due by November 3, 2022.[4] Compl. ¶ 17.

---

[4] Market rate for next-day private air charter services, roundtrip, coast-to-coast on midsize jets are estimated at $70,000 to $96,000, and on large jets, $88,000 to $156,000. These ranges are substantially less than the $197,725 total invoices PJS sent Twitter. *See* Michelle Baran, *Thinking of Taking a Private Jet Instead? Here's How You Can,* AFAR (April 5, 2022), https://www.afar.com/magazine/how-much-does-a-private-jet-cost; *see also* Nick Copley, *How Much Does It Cost To Charter A Private Aircraft?,* Sherpa Report (December 23, 2022), https://www.sherpareport.com/aircraft/cost-charter-private-aircraft.html. In addition, numerous commercial planes fly nonstop between Newark, New Jersey, and San Francisco, California, each day, with tickets available for approximately $800 roundtrip. https://www.kayak.com.

### C. Twitter Rejected PJS Invoices for the Flights Dispatched in Breach of the BPA's Express Terms, and Plaintiff Filed the Present Action

On or around November 16, 2022, Twitter employee Marty O'Neill notified PJS that Twitter is not liable for the $197,725 in private jet flights at issue and reminded PJS that "only Designated Representatives listed in Exhibit A of the [BPA] are allowed to order services on behalf of Twitter." Compl. ¶ 21 (brackets in original). On December 9, 2022, Plaintiff filed suit in this Court. *See* Case No. 22-cv-548-JL (the "Initial Action"). After Twitter filed a Motion to Dismiss, PJS filed an Amended Complaint, and this Court denied the Motion to Dismiss without prejudice in light of the Amended Complaint. PJS then voluntarily dismissed the Initial Action and re-filed it in state court (the "State Action"). On March 27, 2023, Twitter removed the State Action to this Court.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be sufficient to move the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader," but must disregard "statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc) (citation omitted); *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation, internal quotation marks, and brackets omitted).

## ARGUMENT

### I. PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

#### A. PJS Materially Breached the BPA's Express Terms

By failing to follow the express conditions of the BPA and dispatching flights without authorization by a Designated Representative, PJS materially breached the BPA. A breach of contract:

> is material if a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions, the breach substantially defeats the contract's purpose, or the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract.

*Ellis v. Candia Trailers & Snow Equip., Inc.*, 164 N.H. 457, 467, 53 A.3d 1164 (2012) (affirming finding of material breach) (citation, internal quotation marks, and emphasis omitted); *see also Direct Capital Corp. v. Am. Tank Co.*, No. 16-cv-366-SM, 2017 WL 7411007, at *2 (D.N.H. Oct. 26, 2017) (finding material breach), *R&R approved*, 2017 WL 7411004 (D.N.H. Nov. 15, 2017); *S & W Roofing, LLC v. Shepperson*, No. 2019-0506, 2020 WL 2306477, at *1 (N.H. Apr. 24, 2020) (non-precedential order) (noting that "[a] breach of contract is material when it touches upon the fundamental purpose of the contract and defeats the parties' object in entering into the contract" (citation omitted)). The authorization terms of the BPA required a Designated Representative to request services, review a SOW provided by PJS, and then provide written approval. The BPA bolded and capitalized the following terms:

> **Designated Representative MUST acknowledge acceptance of the terms set forth in the SOW in writing or via e-mail in order to complete the reservation.**

Ex. A (emphasis in original).

6

PJS fails to plead that it satisfied the terms of the contract. PJS does not plead (i) that one of Twitter's "Designated Representatives" requested the air charter services at issue from PJS; (ii) that PJS furnished a SOW; or (iii) that one of Twitter's Designated Representatives approved the SOW. Instead, PJS pleads that despite the BPA, flights were booked over text messages and email, without an SOW, and without approval by a Designated Representative. By bypassing the express terms of the BPA and dispatching flights without approval by a Designated Representative, PJS materially breached the BPA.

### B. Plaintiff's Breach Discharged Twitter's Duty Under the BPA

Twitter cannot be obligated to pay for flights that were dispatched as a result of Plaintiff's material breach of the BPA. "A material breach of contract by one party to a contract discharges the duty of performance of the other." *Gaucher v. Waterhouse*, 175 N.H. 291, 296, 286 A.3d 1157 (2022) (citation omitted); *see also S & W Roofing*, 2020 WL 2306477, at *1-2 (affirming defendant's discharge of contractual duties where plaintiff was in material breach); *Chao-Cheng Teng v. Bellemore*, No. 11-cv-281-JL, 2013 WL 3322340, at *5 n.2 (D.N.H. July 1, 2013) (noting that a material breach of contract likely discharged any duty under the agreement).

The BPA is a complete writing that prescribes how Twitter and PJS will do business. By bypassing the Designated Representatives, PJS undermined the contract's purpose. The BPA did not set prices for flights; the BPA did not set which Twitter employees could be passengers on PJS flights; the BPA did not set schedules or routes for flights; instead, the BPA set terms for booking private jet services. Because PJS materially breached the BPA in a way that contravened those express terms, Twitter's duty was discharged, and PJS should be barred from seeking damages under a contract claim.

To the extent that PJS claims that the course of performance between the Parties deviated from the contract terms, and thereby waived the necessity of SOW approval by a Designative Representative, PJS has not pled any amendment that meets the requirements of the BPA. The Standard Terms and Conditions of the BPA state: "Amendment and Revisions. Any amendment, modification, or waiver of, or supplement to, any provision of the BPA, these Standard Terms and Conditions, or any SOW must be agreed upon in writing by both [Twitter] and PJS to be binding." Ex. A. PJS has not pled that the terms of the BPA were ever amended, modified, or waived by any mutual agreement reduced to writing. PJS has not pled that Twitter ever modified the list of Designative Representatives.

Additionally, PJS's failure to plead such an amendment of the BPA must be considered in light of the fact that the current complaint is effectively its third—PJS filed two in the Initial Action, then filed the complaint in the State Action. PJS had the benefit of Twitter's argument on this precise issue when it filed the Amended Complaint in the Initial Action and the complaint in the State Action and apparently chose not to address it. The Court should not provide PJS a fourth bite at the apple. PJS's material breach of the BPA discharged Twitter's duty, and the Court should dismiss Count I.

## II. PLAINTIFF'S QUASI-CONTRACT CLAIM SHOULD BE DISMISSED

### A. Because the Services at Issue are Covered by an Express Contract, the Court Must Dismiss Plaintiff's Quasi-Contract Claim

Count II should be dismissed for failing to state a claim upon which relief may be granted. New Hampshire law provides that an express contract will bar any quasi-contract claim concerning the subject matter covered by the express contract. *Tentindo v. Locke Lake Colony Ass'n*, 120 N.H. 593, 597, 419 A.2d 1097 (1980) (finding that "[w]here there is a

valid express contract between the parties . . . the law will not imply a quasi-contract . . . . the terms of [an] agreement may not be varied by a legal fiction" (citation omitted)); *see also Androscoggin Valley Reg'l Refuse Disposal Dist. v. R.H. White Constr. Co.*, No. 15-cv-434-LM, 2017 WL 1906612, at *4-5 (D.N.H. May 8, 2017) (dismissing quasi-contract claim where the parties' relationship was governed by an existing contract).  Plaintiff has alleged that there was a valid, express contract (the BPA) between the Parties, but seeks a quasi-contract remedy.  This is precisely the sort of claim that New Hampshire law prohibits where there is an enforceable, express agreement between the parties.  Because the comprehensive BPA governs the provision of air charter services, any quasi-contract claim concerning private jet flights provided by PJS should be dismissed.

> **B.** **Plaintiff Fails to Plead the Elements of Quasi-Contract**

In addition to the fact that the Court should dismiss Count II because the Parties' relationship is governed by an express contract, Plaintiff has not pled a valid quasi-contract claim, which requires showing that: "(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 612 (2010) (citation omitted) (dismissing claim where petitioner failed to allege facts sufficient to state a claim for quantum meruit); *see also Mangiardi Bros. Trucking, Inc. v. Dewey Env't, LLC*, No. 12-cv-481-JD, 2013 WL 1856338, at *6-7 (D.N.H. Apr. 30, 2013) (dismissing quasi-contract claim where plaintiff did not allege that it conducted work with knowledge and consent of the defendants, and where it was not reasonable for the third-tier subcontractor to expect payment from the property owner or general contractor). Plaintiff has not pled that the Designated Representatives were the individuals with whom

9

PJS arranged the flights at issue, and thus has not pled that Twitter's decisionmakers as defined in the BPA consented to these flights.  Further, it would be unreasonable for PJS to expect payment where it dispatched private jet flights in material breach of the BPA's express terms for booking services.  The very reason those terms are in the contract is to prevent situations such as the flights at issue.  The Court should therefore dismiss the quasi-contract claim.

### PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

The Court should dismiss Count III for failing to state a claim upon which relief may be granted.  As with quantum meruit, under New Hampshire law, claims for unjust enrichment are foreclosed by the existence of an express contract.  *See Turner v. Shared Towers VA, LLC*, 167 N.H. 196, 202, 107 A.3d 1236 (2014) (finding that "a 'court cannot allow recovery under a theory of unjust enrichment when there is a valid, express contract covering the subject matter at hand'" (quoting *Axenics, Inc. v. Turner Constr. Co.*, 164 N.H. 659, 669, 62 A.3d 754 (2013)).  "Unjust enrichment is an equitable remedy that is available when an individual receives 'a benefit with would be *unconscionable* for him to retain.'" *Id.* (quoting *Axenics*, 164 N.H. at 669) (emphasis in original).  Importantly, "unjust enrichment may not supplant the terms of an agreement . . . . because restitution is subordinate to contract as an organizing principle of private relationships, and the terms of an enforcement agreement normally displace any claim of unjust enrichment within their reach." *Id.* (citations and internal quotation marks omitted).  Plaintiff's assertion of a valid, express contract (the BPA) between the Parties therefore precludes its claim for unjust enrichment.

Where there is an agreement between the parties, unjust enrichment claims may only

10

proceed where the contract has been rendered invalid or the benefit conferred on the defendant falls outside the scope of the contract. *See Axenics*, 164 N.H. at 669-70 (explaining that "unjust enrichment may be available to contracting parties if the benefit received is outside the scope of the contract" (citing *Clapp v. Goffstown Sch. Dist.*, 159 N.H. 206, 211 (2009)); Restatement (Third) of Restitution and Unjust Enrichment § 2, comment C (2011) (providing that unjust enrichment claims may proceed "when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations").

Here, PJS failed to allege that the BPA was invalid or otherwise unenforceable. *See Turner*, 167 N.H. at 202 (Explaining that "[b]ecause the loan agreement and note remained viable, it was error for the trial court to have afforded the petitioner a remedy under an unjust enrichment theory."). Further, the benefit at issue—private charter flight services—is precisely the benefit contemplated under and governed by the BPA. *See Axenics*, 164 N.H. at 670 ("Since the subcontract governed the subject of Axenics' unjust enrichment claim, and the subcontract was not abandoned by the parties, the trial court erred in allowing Axenics to recover against Turner under a theory of unjust enrichment." (citation omitted)). Thus, neither exception to the rule that unjust enrichment cannot lie where a valid contract exists applies.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

| | |
|---|---|
| Date: April 3, 2023 | Respectfully Submitted,<br>X CORP., successor in interest to named Defendant TWITTER, INC.<br><br>By its attorneys,<br>BERNSTEIN SHUR, SAWYER & NELSON, P.A.<br><br>*/s/ Edward J. Sackman*<br>Edward J. Sackman, N.H. Bar #19586<br>Matthew J. Miller, N.H. Bar #271594<br>670 N. Commercial Street, Suite 108<br>P.O. Box 1120<br>Manchester, New Hampshire 03105<br>(603) 623-8700<br>nsackman@bernsteinshur.com<br>mmiller@bernsteinshur.com |