**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

PRIVATE JET SERVICES GROUP, LLC,

    plaintiff,

    v.                                                                    Civil Action No.: 1:23-cv-210-PB

TWITTER, INC.,

    defendant.

**PLAINTIFF'S OBJECTION**
**TO DEFENDANT'S MOTION TO DISMISS**

Private Jet Services Group, LLC ("PJS") objects to the Motion to Dismiss (Doc. No. 6) filed by X Corp. as successor in interest to Twitter, Inc. ("Twitter").

## I.    <u>INTRODUCTION</u>

The Court must deny Twitter's Motion to Dismiss because PJS has pleaded allegations plausibly stating claims for breach of contract (Count I), and/or in the alternative for breach of quasi-contract (Count II) and/or in the further alternative for unjust enrichment (Count III).

Twitter's core argument -- that "PJS materially breached the BPA's Express Terms" (Memorandum in Support of Motion to Dismiss ("Memo"), pp. 6-8) -- would require the Court to ignore PJS's allegations and to find in favor of the merits of Twitter's apparent affirmative defense, which the Court cannot do at this stage of these proceedings.

The remainder of Twitter's arguments must be rejected because they seek to dismiss plausible claims that PJS alleges in the alternative due to the reasons that Twitter provided for its non-payment in November 2022 and that Twitter continues to argue in its Motion to Dismiss.

## II.    <u>ALLEGATIONS</u>

PJS is an air charter passenger transportation services broker, which means it arranges for private air passenger transportation on behalf of others.  Doc. No. 1-1 ("Compl."), ¶ 7.

On June 24, 2020, PJS and Twitter agreed to and signed an Air Charter Services Blanket Purchase Agreement #2020-4151 ("BPA") for the purpose of Twitter to be able to access air charter passenger transportation services through PJS.  Compl. ¶¶ 8-9.  The BPA contains provisions for the mechanics of Twitter booking and accepting air charter passenger transportation services including through its Designated Representatives.  Compl. ¶ 10; Doc. No. 6-2 (BPA pp. 1-2 and 4).

However, from the beginning of their relationship, Twitter's process of booking and accepting air charter passenger transportation services did not always follow the mechanics set forth in the BPA for its Designated Representatives to book and accept a Statement of Work to complete the reservations.  Compl. ¶ 10 (**"in practice, Twitter's process of booking and accepting air charter transportation services did not always follow the process set forth in the BPA including because Twitter employees other than its Designated Representatives booked and accepted air charter passenger transportation services, which PJS provided, and for which Twitter paid."** (emphasis added)).[1]

For example, on at least ten occasions, Twitter booked a flight with PJS through someone other than a Designated Representative and paid for the flight and PJS's services (Compl. ¶ 11), including: (1) for former Twitter executive Leslie Berland from Teterboro, New Jersey to San

---

[1]    In its Motion to Dismiss, Twitter <u>completely ignores</u> all of the allegations in paragraphs 10 and 11.a. through 11.j. of PJS's Complaint, which allege that the Designated Representative procedures are <u>not</u> material to the BPA and, even if they were, also demonstrate that the parties' conduct modified how air charter passenger transportation services under the BPA were booked and accepted in practice.

Francisco, California on October 27, 2020 with a return flight on October 29, 2020 (Compl. ¶ 11.a.); (2) for former Twitter executive Peiter Zatko from Teterboro, New Jersey to Santa Rosa, California on October 6, 2021 with a return flight the same day (Compl. ¶ 11.b.); (3) for former Twitter Chief Financial Officer ("CFO") Ned Segal from San Jose, California to Los Angeles, California on November 7, 2021 (Compl. ¶ 11.c.); (4) for former Twitter Chief Executive Officer ("CEO") Parag Agrawal from San Jose, California to Teterboro, New Jersey on December 17, 2021 (Compl. ¶ 11.d.); (5) for former Twitter CEO Parag Agrawal from Philadelphia, Pennsylvania to Mountain View, California on January 2, 2022 (Compl. ¶ 11.e.); (6) for former Twitter CFO Ned Segal from Oakland, California to Akron, Ohio on February 17, 2022 (Compl. ¶ 11.f.); (7) for former Twitter CEO Parag Agrawal from Mountain View, California to State College, Pennsylvania on June 17, 2022 with a return flight on June 19, 2022 (Compl. ¶ 11.g.); (9) for former Twitter CEO Parag Agrawal from Mountain View, California to Hailey, Idaho on July 5, 2022 with a return flight on July 10, 2022 (Compl. ¶ 11.h.); and (10) for former Twitter CEO Parag Agrawal from Teterboro, New Jersey to Dallas, Texas back to Teterboro, New Jersey and finally to Mountain View, California on August 3, 2022 (Compl. ¶ 11.i.).

Twitter paid PJS's invoices for each of the above air charter passenger transportation services that were booked and accepted not in conformance with the BPA's Designated Representative process.  PJS alleges that this demonstrates that Twitter's booking and accepting of, PJS's provision of, and Twitter's payment for air charter passenger transportation services not in conformance with the BPA's Designated Representative process does not constitute a material breach of the BPA.  Compl. ¶ 11.j. (**"booking and accepting air charter transportation services not in conformance with the BPA's Designated Representative process does not constitute a material breach of the BPA."** (emphasis added)).

In accordance with the parties' practice, on the evening of October 25, 2022, former Twitter employee Taylor DeLorenzo (who was not a Designated Representative) booked and accepted air charter passenger transportation services for former Twitter executive Leslie Berland from Teterboro, New Jersey to San Francisco for the following morning.  Compl. ¶ 12. PJS arranged, confirmed, and provided the air charter passenger transportation services for the Twitter executive, and Twitter accepted the services provided by PJS.  Compl. ¶ 13.  On October 26, 2022, the day of the flight, PJS invoiced Twitter for $103,850 for the services, with payment due by November 2, 2022.  Compl. ¶ 14.

During the afternoon of October 27, 2022, former Twitter employee Cynthia Ancheta (who was not a Designated Representative) booked and accepted air charter passenger transportation services for Berland from San Francisco to Teterboro.  Compl. ¶ 15.  PJS arranged, confirmed, provided the service, which Twitter accepted, and sent an invoice that day in the amount of $93,875.  Compl. ¶¶ 16-17.

Because the flights were booked and accepted separately, they were priced and sold as individual flights, and not as a "roundtrip" as Twitter incorrectly argues.[2]  Compl. ¶ 18.  PJS was given twelve and four hours of notice for each of the flights that Twitter requested and accepted, respectively, and each aircraft needed to be fully Wi-Fi capable as the former Twitter executive worked on the highly publicized acquisition by Elon Musk.  Compl. ¶ 19.

---

[2]     In a footnote in its Motion to Dismiss, Twitter makes a factual argument that PJS overcharged for the flights it chartered for the Twitter executive.  Doc. No. 6-1, at 4 n.4.  In addition to being improper for consideration on a motion to dismiss, the articles Twitter cites and the calculations it runs are inapposite to the dispute in these proceedings as Twitter's examples are for roundtrip flights, whereas in this case, Twitter did not book a roundtrip flight but rather two separate flights.  *See* Gollan, Doug, *Elon Musk's Twitter Says It Was Overcharged for Private Jet Charter Flights.  Here's Why That Could Be Wrong*, Private Jet Card Comparisons (Feb. 1, 2023), https://privatejetcardcomparisons.com/2023/02/01/elon-musks-twitter-says-it-was-overcharged-for-private-jet-charter-flights-heres-why-that-could-be-wrong/.

Despite the fact that Twitter booked and accepted these flights, Twitter now refuses to pay for either flight.  Compl. ¶ 20.  Two weeks after the invoice deadline, on November 16, 2022, and after Twitter's acquisition by Elon Musk, Twitter employee Marty O'Neill informed PJS via email that it would not be paying for the flights because they were not booked in accordance with the Designated Representative provision in the BPA.  Compl. ¶ 21.  That same day, former Twitter employee Taylor DeLorenzo, who had booked and accepted the first flight, responded to that email, stating that the Twitter CEO at the time of the flight, Parag Agrawal, had approved the expense and stated that she had been booking and accepting prior PJS transactions, not in accordance with the Designated Representative procedures, and that Twitter paid for those services without issue.  Compl. ¶ 22.  O'Neill responded to DeLorenzo that "new management is not going to budge" and that the invoice would not be paid.  Compl. ¶ 23.

To date, Twitter has refused to pay for the services that it requested, that PJS provided, and that Twitter accepted.  According to Twitter employee O'Neill's internal Twitter emails, the reason that Twitter now refuses to pay PJS's invoices for the services that PJS provided is because Twitter's "new management" has made a decision not to pay those invoices and "new management wants to hold firm on this."  Compl. ¶ 25.

## III.    STANDARD OF REVIEW

"To state a claim for relief, a complaint must set forth '[f]actual allegations [that are] enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).'"  *Franchi v. New Hampton Sch.*, 656 F. Supp. 2d 252, 254 (D.N.H. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "This showing 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*  "By the same token, the showing does not

require 'detailed factual allegations,' simply 'enough factual matter (taken as true) to suggest' the plaintiff's right to relief."  *Id.*

## IV.    ARGUMENT

### A.    Breach of Contract (Count I)

> i.    *Whether PJS materially breached the BPA is a question of fact which cannot be decided at the motion to dismiss stage.*

Twitter's core argument -- that because PJS materially breached the BPA, Twitter should not have to pay for the benefit of the services it received -- is backwards insomuch as Twitter seeks to retain the benefit of the services it requested and accepted, without paying for them, by blaming PJS after-the-fact for Twitter's departure from the BPA's Designated Representative framework.

Ultimately, whether a party materially breached a contract is a question of fact that cannot be resolved at the pleading stage, particularly here, where PJS has alleged that the Designated Representative provisions of the BPA are not material and were regularly not followed.  *Found. for Seacoast Health v. Hosp. Corp. of Am.*, 165 N.H. 168, 181 (2013) ("[w]hether a breach of contract is material is a question of fact").  Moreover, Twitter has not alleged that it was injured or in any way damaged by PJS's alleged breach of the BPA.  Rather, Twitter benefited from the breach that it now blames on PJS by obtaining, at its request and approval, two private charter flights at PJS's expense.  *Found. for Seacoast Health v. Hosp. Corp. of Am.*, 165 N.H. 168, 182 ("[W]here a breach causes no damages or prejudice to the other party, it may be deemed not to be 'material.'"  (quoting 23 Williston on Contracts § 63.3)).  *See also Fitz v. Coutinho*, 136 N.H. 721, 724-25 (1993) ("Not every breach of duty by one party to a contract discharges the duty of performance of the other.") (citing 6 A. Corbin on Contracts § 1253).

PJS does not concede, and did not allege, that it materially breached the BPA.  Rather, PJS alleges, as discussed more thoroughly in Section II.A.iii, sufficient facts to demonstrate that Twitter cannot dismiss the Complaint based on Twitter's as-of-yet-unpleaded affirmative defense of prior material breach -- particularly where Twitter elected to perform under the BPA after the purported material breach by accepting and retaining the services provided by PJS.

Further, none of the cases that Twitter cites in support of its argument for a finding of material breach were decided at the motion to dismiss stage.  *See* Doc. No. 6-1, at 6 (citing *Ellis v. Candia Trailers & Snow Equip., Inc.*, 164 N.H. 457, 467 (2012) (affirming finding of material breach at bench trial); *Direct Cap. Corp. v. Am. Tank Co.*, No. 16-cv-366-SM, 2017 WL 7411007, at *2 (D.N.H. Oct. 26, 2017);[3] *S&W Roofing, LLC v. Shepperson*, No. 2019-0506, 2020 WL 2306477, at *1 (N.H. Apr. 24, 2020) (affirming finding of prior material breach on appeal)).

Additionally fatal to its Motion to Dismiss is that Twitter completely ignores PJS's allegations of Twitter's practice of not utilizing the Designated Representative procedures in the BPA to book and accept, and pay for, air charter passenger transportation services.  On this basis alone, the Court must deny the Motion to Dismiss because two issues must be resolved on the facts of the case – not at the pleading stage.  The first is whether the Designated Representative procedures were actually material to the BPA, where PJS alleges they were not.  *Found. for Seacoast Health,* 165 N.H. at 181 ("[w]hether a breach of contract is material is a question of fact").  The second is whether the parties' conduct modified the Designated Representative

---

[3]     The Court in *Direct Capital Corp.* did make a finding of material breach based on the facts as alleged in the Complaint, but only because the defendant defaulted, and the plaintiff moved for default judgment.  *See* 2017 WL 7411007, at *1.  All inferences were construed in favor of plaintiff.  Here, for the Court to find that PJS, the plaintiff, materially breached the BPA would require it to construe the facts *against* the plaintiff, which it cannot do at the motion to dismiss stage.

procedures in the BPA, where PJS alleges facts to plausibly support that it did.  New Hampshire Civil Jury Instructions, Pope, 2023 ed., § 32.18 ("Whether the parties have agreed to change their obligations under a contract, or the terms of a contract, must be determined under the facts of each case, including the conduct of the parties."); *C & M Realty Tr. v. Wiedenkeller*, 133 N.H. 470, 477 (1990) ("Whether or not a contract has been modified is a question of fact for the trial court to determine").

Because the Court must accept PJS's allegations as true at this stage of the proceedings and draw all reasonable inferences in PJS's favor, *see Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018), and because the materiality of the alleged breach and the parties' conduct are disputed questions of fact that cannot be resolved on a motion to dismiss, *see Homes Dev. Corp v. Edmund & Wheeler, Inc.*, 2022 WL 4586480, at *14 (D.N.H. Sept. 29, 2022) (stating that the factual disputes cannot be decided at the motion to dismiss stage), the Court must deny Twitter's Motion to Dismiss PJS's breach of contract claim (Count I).

     ii.     *Twitter cannot move to dismiss PJS's breach of contract claim using the affirmative defense of prior material breach when factual disputes remain.*

Twitter's argument that PJS's breach of contract claim must be dismissed relies upon an incorrect application of the affirmative defense of prior material breach.  *See* Doc. No. 6-1, at 6-8.  Moreover, an affirmative defense can only be adjudicated on a motion to dismiss *if* "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude."  *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 36 (1st Cir. 2008) (quoting *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004)) (internal footnote omitted).  As discussed above, there are factual disputes as to the materiality of PJS's alleged prior breach of contract as well as the parties' conduct, which are not "definitively ascertainable

from the complaint" and require findings of fact by the factfinder.  *See, Found. for Seacoast Health*, *supra*.  Accordingly, the Court cannot dismiss PJS's claim based on Twitter's affirmative defense of prior material breach, which requires findings of fact that cannot yet be made.

> iii.     *Twitter cannot assert an affirmative defense of prior material breach because it continued to perform under the contract.*

Twitter's claim that PJS's alleged prior material breach discharged its duty to perform ignores the parties' conduct under the BPA.  "It is well established that conduct indicating a willingness to continue to honor a contract, despite knowledge that the other party has failed to perform, 'operates as a promise to perform in spite of that non-occurrence.'"  *AccuSoft Corp. v. Palo*, 237 F.3d 31, 55 (1st Cir. 2001) (quoting Restatement (Second) of Contracts § 246; *Canada-Atlantic & Plant S.S. Co. v. Flanders*, 165 F. 321, 321 (1st Cir. 1908) (holding that the breach by one party gives the other the right of election to continue under the contract)).

If Twitter in real-time believed that PJS chartering flights based on requests from non-Designated Representatives constituted a material breach of contract, then it had the choice, at that moment, to either "continue the contract or to refuse to perform further."  *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1662 (2019) (quoting 13 Williston on Contracts § 39:32).  As made obvious by Twitter's acceptance of the services provided by PJS, it opted to continue to perform.

> When one party commits a material breach of contract, the other party has a choice between two inconsistent rights—it can either elect to allege a total breach, terminate the contract and bring an action or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach—but the nonbreaching party, **by electing to continue receiving benefits under the agreement, cannot then refuse to perform its part of the bargain.**

13 Williston on Contracts § 39:32 (emphasis added).

Despite Twitter's assertion to the contrary, Twitter's waiver or election of remedy by continuing to perform under the BPA does not require that the parties formally have recognized the shift in performance in writing per the Amendment provision of the BPA.  That would be contrary to the common-law defenses of waiver, estoppel, and election of remedies that are not yet ripe because Twitter has not yet answered, but that PJS would advance, and which would have to be resolved on the facts, in opposition to Twitter's defense of prior material breach.

PJS has sufficiently alleged that, since the beginning of the contractual relationship, PJS and Twitter have been operating under the BPA without following the strict mechanics of the Designated Representative procedures for Twitter to book and accept the flight.  PJS consistently held up its end of the agreement by providing the services that Twitter booked and accepted, and for which Twitter paid, until it decided not to.  Twitter was not damaged by the parties' mutual engagement in booking and accepting flights through Twitter employees other than those named in the BPA, and it cannot now refuse to pay for a benefit that it requested, accepted and kept.

    **B.**      **Breach of Quasi-Contract (Count II) and Unjust Enrichment Count (III)**

       *i.*      *PJS can plead equitable claims in the alternative to breach of contract.*

Twitter argues that PJS cannot state a claim for either breach of quasi-contract or unjust enrichment because there was a valid express agreement between the parties.  Accordingly, those combined-arguments will be addressed jointly here.

Twitter cannot have it both ways.  <u>Either</u> the parties were operating under the BPA and Twitter breached by failing to pay PJS for flights it booked and accepted, <u>or</u> Twitter, outside of the BPA and/or after a breach by PJS, accepted flights from PJS for which Twitter then failed to pay.  The law allows PJS to plead quasi-contract claims, like breach of a quasi-contract or unjust enrichment, in the alternative to a claim of breach of contract, and it is too early in these

proceedings to dismiss one type of claim in favor of the other.  *See Aftokinito Props., Inc. v. Millbrook Ventures, LLC*, No. 09-cv-415-JD, 2010 WL 3168295, at *5 (D.N.H. Aug. 9, 2010) ("Pleading in the alternative is an appropriate course to follow at this stage of the proceedings.") (quoting *Scott v. First Am. Title Ins. Co.*, No. 06-cv-286-JD, 2007 WL 135909, at *6 (D.N.H. Jan. 17, 2007); *Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 612 (2010) (quoting 26 Williston on Contracts § 68:1) ("Restitution and quantum meruit recovery based upon 'unjust enrichment are allowed by the courts as alternative remedies to an action for damages for breach of contract.'").

If the parties did not operate within the boundaries of the BPA (as Twitter argues), but where PJS provided services that Twitter nonetheless requested, accepted and did not reject, then Twitter would necessarily have elected to accept the benefit of PJS's services outside the scope of the parties' BPA, and PJS is entitled to seek restitution for services rendered for which Twitter refused to pay.  *See Estes v. ECMC Grp., Inc.*, 565 F. Supp. 3d 289, 306 (D.N.H. 2020) ("Quantum meruit is a restitutionary remedy intended for use by contracting parties who are in material breach and thus unable to sue on contract.") (quoting *R.J. Berke & Co., Inc. v. J.P. Griffin, Inc.*, 116 N.H. 760, 764 (1976)); *Aftokinito Props.*, 2010 WL 3168295, at *5 ("Unjust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received as outside the scope of the contract.") (quoting *Clapp v. Goffstown Sch. Dist.*, 159 N.H. 206, 211 (2009)).

Twitter's argument that it should not have to pay for services that it requested and accepted, just because the process it employed to obtain those benefits was outside the scope of the BPA, necessarily removes the benefits conferred upon Twitter from the scope of the BPA, and thus, requires PJS to plead in the alternative.  The best case that Twitter cites in support of its

argument in this respect is *Androscoggin Valley Reg'l Refuse Disposal Dist. v. R.H. White Constr. Co.*, No. 15-CV-434-LM, 2017 WL 1906612, at *4 (D.N.H. May 8, 2017) (citing *Turner v. Shared Towers VA, LLC*, 167 N.H. 196, 202 (2014)).   However, the legal authority that *Androscoggin* cites to and relies upon (i.e., *Turner*) supports PJS's alternatively pleaded claims particularly where Twitter continues to advance a theory that it should be allowed to retain extra contractual benefits conferred upon it without having to pay for them.   *Turner*, 167 N.H. at 203 ("The exception to which the petitioner refers allows contracting parties to recover under an unjust enrichment theory when 'the benefit received is outside the scope of the contract.'" (citing *Axenics, Inc. v. Turner Const. Co.*, 164 N.H. 659, 670 (2013))).

Moreover, in light of Twitter's argument that because PJS is in material breach of the BPA it cannot recover in contract, quantum meruit is the correct claim that PJS must plead in the alternative.   *R. J. Berke & Co. v. J. P. Griffin, Inc.*, 116 N.H. 760, 764 (1976) ("Quantum meruit is a restitutionary remedy intended for use by contracting parties who are in material breach and thus unable to sue 'on contract.'  See J. Calamari & J. Perillo, Contracts s 159 (1970); 5A A. Corbin, Contracts s 1124 (1964).  It follows that the defaulting party recovering in quantum meruit will generally not have rendered substantial performance.  We have permitted recovery to plaintiffs who have failed to substantially perform.").

For these reasons, PJS's alternative claims for breach of quasi-contract and/or unjust enrichment should not be dismissed for failure to state a claim, particularly where Twitter's statements in November 2022 and its arguments in April 2023 -- that the benefits conferred upon it and retained by it were either outside the scope of or in material breach of the BPA -- necessitate such alternative claims.

      *ii.*     *PJS has sufficiently stated a claim for breach of quasi-contract.*

PJS has sufficiently pleaded a claim for quasi-contract.  A valid quasi-contract claim requires a showing that "(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment."  *Gen. Insulation Co.*, 159 N.H. at 612.  PJS plainly pled that it arranged for two flights for Twitter, at Twitter's request and with sign-off from the then-CEO, and that PJS had been paid for its services under like circumstances in the past.  PJS further alleges that Twitter's position is that those benefits were conferred outside the scope of and/or in breach of the BPA.  Compl. ¶¶ 10-25, 29-32.

PJS's allegations plainly meet the elements of a quasi-contract claim.

## CONCLUSION

WHEREFORE, PJS respectfully requests that the Court:

      A.  Deny Defendant's Motion to Dismiss; and

      B.  Grant such further relief as is necessary and proper.

Respectfully filed,
PRIVATE JET SERVICES GROUP, LLC,

By its attorneys,
SHAHEEN & GORDON, P.A.,

April 17, 2023                    /s/ Timothy J. McLaughlin
                                  Timothy J. McLaughlin (NH bar # 19570)
                                  Olivia F. Bensinger (NH bar # 274145)
                                  107 Storrs Street
                                  P.O. Box 2703
                                  Concord, NH 03302
                                  (603) 617-3035
                                  tmclaughlin@shaheengordon.com
                                  obensinger@shaheengordon.com

## Certificate of Service

        I certify that the foregoing filing is being served upon all counsel of record via the Court's CM/ECF system.

                                  /s/ Timothy J. McLaughlin
                                  Timothy J. McLaughlin

14