**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

_____

|   |
|---|
| PRIVATE JET SERVICES GROUP, LLC | : |
| | : |
| Plaintiff, | : | Civil Action No. 1:23-cv-210-PB |
| | : |
| v. | : |
| | : |
| | : |
| TWITTER, INC. | : |
| | : |
| Defendant. | : |

_____:

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Private Jet Services Group, LLC ("PJS") seeks to avoid dismissal of its contract claim on the basis that deciding the Motion to Dismiss (the "Motion") of Defendant X Corp., as successor in interest to named Defendant Twitter, Inc. ("Twitter") requires deciding two questions of fact.  PJS also argues that it should be allowed to pursue its quantum meruit and unjust enrichment claims in the alternative to its contract claims. Neither argument is effective.

**I.      Granting the Motion does not require deciding factual disputes.**

A.      There is no question of fact as to material breach.

PJS opposes the Motion on the grounds that whether it materially breached the Blanket Purchase Agreement ("BPA") is a question of fact not suited for resolution on a motion to dismiss.  Although some questions of material breach may be too fact-intensive to decide on the pleadings, others are not.  Thus, this Court has not hesitated to grant motions to dismiss contract claims where their deficiencies are apparent on the face of the Complaint.  *See, e.g., Dilorio-Sterling v. Capstone Mgmt., LLC*, 596 F. Supp. 3d 306, 319 (D.N.H. 2022); *Gately v. Mortora*

1

*Instrument, Inc.*, No. 17-cv-100-SM, 2017 WL 3431964, at *6 (D.N.H. Aug. 9, 2017); *Fuller Ford, Inc. v. Ford Motor Co.*, No. Civ. 00-530-B, 2001 WL 920035, at *8 (D.N.H. Aug. 6, 2001); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (Recognizing that material breach can be decided as a matter of law "where the inferences are certain").

The material breach at issue here is PJS's failure to comply with the BPA's requirement that private flights be booked by a "Designated Representative." Compl. ¶ 10. A breach is material if it constitutes a failure "to perform a substantial part of the contract or one or more of its essential terms or conditions." *Ellis v. Candia Trailers & Snow Equip.*, 164 N.H. 457, 466, 58 A.3d 1164, 1172 (2012). To determine what the parties to a contract intended, the Court need only look at the plain meaning of the words and phrases they used. *Birch Broad. v. Capitol Broad. Corp.*, 161 N.H. 192, 196, 13 A.3d 224, 228 (2010). It is apparent upon review of the BPA that the parties intended the Designated Representative requirement to be an essential term. The language requiring a Designated Representative's booking confirmation appears on the first page of the BPA in bold print with the key word capitalized for additional emphasis: "**Customer's Designated Representative MUST acknowledge acceptance of the terms set forth in the SOW in writing or via e-mail in order to complete the reservation.**" Ex. A to Motion [Dkt. Doc. No. 6-2]. There is nothing ambiguous about this provision. It communicates in emphatic and direct language that confirmation from a Designated Representative is an essential term. No further background is required to decide that breach of this term is material.

PJS also claims that the breach cannot have been material because it did not prejudice Twitter. This, too, is misguided. The obvious purpose of the Designated Representative requirement is to prevent Twitter from incurring charges for unauthorized flights. In this case,

2

PJS seeks to recover from Twitter money for flights it did not authorize in the manner the BPA required.  The Designated Representative requirement was intended to avoid this very scenario.  PJS failed to comply with the term, dispatched the flights, and now demands payment.  The Designated Representative requirement would be meaningless if it did not protect Twitter here.

>  B.   There is no question of fact as to course of performance, particularly where PJS has failed to address the BPA's anti-waiver provision.

PJS also claims that there is a question of fact as to whether the parties' alleged course of performance waived the Designated Representative requirement.  This argument must fail because a motion to dismiss is based on the well-pled allegations in the Complaint, *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc), and PJS presents this theory for the first time in its Objection.  Moreover, Twitter asserted the same Designated Representative argument in the motion to dismiss it submitted in response to the original Complaint PJS filed against Twitter at the end of 2022.  *See Private Jet Services Group, LLC v. Twitter, Inc.*, No. 22-cv-548-JL, Dkt. Doc. No. 17-1.  For reasons unknown to Twitter, PJS amended its Complaint, then voluntarily dismissed it, and filed a third version of the Complaint in Merrimack County Superior Court.  None of these pleadings alleged that a course of performance had modified the BPA.  Each made reference to other business between the parties, but at no time did PJS argue waiver of the Designated Representative requirement.

Even assuming that PJS had argued waiver, that would not be enough to avoid dismissal.  PJS's own "Standard Terms and Conditions," which were attached to the BPA, require that "[a]ny amendment, modification, or waiver of, or supplement to, any provision of the BPA, these Standard Terms and Conditions, or any SOW must be agreed upon in writing by both the Customer and PJS to be binding."  BPA at 6.  Where such anti-waiver language

3

exists, a party arguing that course of performance waived a term must establish that the course of performance waived both the term *and* the anti-waiver provision. *Prime Financial Group, Inc. v. Masters*, 141 N.H. 33, 37, 676 A.2d 528, 531 (1996).

PJS has not addressed the anti-waiver clause in any of its filings, much less shown that the parties intended to waive it. This failure is fatal to its Complaint because the clause requires that all amendments, modifications, or waivers of the BPA be in writing, including an agreement to waive the anti-waiver provision. PJS does not plead or identify any writing or course of performance purporting to waive the anti-waiver provision. When interpreting an agreement including multiple documents, such as the BPA and incorporated Standard Terms and Conditions, courts will "seek to harmonize and give effect to the provisions of the various documents so that none will be rendered meaningless." *West v. Turchioe*, 144 N.H. 509, 515, 761 A.2d 382, 387 (1999). Treating PJS's Objection as an effective assertion that the parties intended to waive the anti-waiver clause when the Objection has not even addressed the provision would render the clause meaningless. According meaning to the anti-waiver provision requires dismissal.

> C.   PJS's characterization of Twitter's material breach argument as an affirmative defense does not change the analysis.

PJS maintains that Twitter's material breach argument is an affirmative defense and that asserting such a defense is improper where issues of fact are undecided. This argument is really just a different version of PJS's claim that there are undecided issues of fact. As PJS concedes, the defense of material breach may be sustained on a motion to dismiss if "the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information." *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 36 (1st Cir. 2008). Twitter's motion asserts material breach based upon a specific fact in the

Complaint—PJS's failure to book the flights at issue via a Designated Representative. The Complaint is crystal clear that the flights were not booked or confirmed via a Designated Representative. *See* Compl. at ¶¶ 12, 15. Thus, the facts necessary to establish the defense are evident from the record and the defense is applicable.

## II.  The existence of a valid, binding contract between the parties precludes proceeding on claims of quantum meruit or unjust enrichment.

PJS claims that it is entitled to pursue quantum meruit and unjust enrichment claims in the alternative to its contract claim. This Court considered and rejected precisely the same argument in a case cited in the Motion: *Androscoggin Valley Regional Refuse Disposal Dist. v. R.H. White Constr. Co.*, No. 15-cv-434-LM, 2017 WL 1906612 at *4 (D.N.H. May 8, 2017). There, the plaintiff, referred to as the "District" in the opinion, brought claims arising out of an agreement between the parties under which the defendant was to design and build a landfill gas processing facility for the District. *Id.* at *1. That case, like this one, involved a specific contractual agreement between the parties. *See id.* And, as in this matter, the District sought to recover for both breach of contract and unjust enrichment / quantum meruit. *Id.* at *2. The defendant moved to dismiss on the grounds that the District was precluded from pursuing quasi-contract claims because the contract governed the parties' relationship. *Id.* at *4 (*citing Turner v. Shared Towers VA, LLC*, 167 N.H. 196, 202, 107 A.3d 1236, 1242-43 (2014)). This Court granted the motion, explaining that the existence of a contract foreclosed equitable remedies. *Id.* at *5. It wrote that "[t]he District's assertion that it may plead inconsistent theories of recovery [was] misplaced. There is no dispute in this case that the parties entered into the Agreement and that the Agreement governed the subject matter of the case." *Id.* at *5 n.4.

This dispute presents nearly identical facts.  Accepting the allegations in PJS's Complaint as true, the BPA is a specific contractual agreement that governs the subject matter of this case—arranging for private flights—just as the contract in *Androscoggin Valley* did in that case.  Unjust enrichment might be available if the benefits received were outside the scope of the contract, *see id.* at *6, but here the benefits at issue were "air charter passenger transportation services," Compl. at ¶ 9, and PJS's quasi-contract claims seek recovery for providing those services.  *See id.* at ¶¶ 32, 36.  The Court should therefore rule as *Androscoggin Valley* did and dismiss PJS's quasi-contract claims.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Date: April 24, 2023

Respectfully Submitted,
Defendant X CORP., successor in interest to named Defendant TWITTER, INC.

By its attorneys,
BERNSTEIN SHUR, SAWYER & NELSON, P.A.

*/s/ Edward J. Sackman*
Edward J. Sackman, N.H. Bar #19586
Matthew J. Miller, N.H. Bar #271594
670 N. Commercial Street, Suite 108
P.O. Box 1120
Manchester, New Hampshire 03105
(603) 623-8700
nsackman@bernsteinshur.com
mmiller@bernsteinshur.com

6